# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Michael Livingston, Heather Livingston, | ) |
| | ) Civil Action No. 3:17-cv-01985-JMC |
| Plaintiffs, | ) |
| | ) |
| v. | ) **ORDER AND OPINION** |
| | ) |
| Susan Luberoff, MD, South Carolina Department of Social Services, Richland County Sheriff's Department, Misty Puckett, Don Robinson, Kevin Preston, Angela Scott, | ) |
| | ) |
| Defendants. | ) |

This case arises from an investigation and prosecution of Plaintiffs Michael Livingston and Heather Livingston for alleged child abuse. Plaintiffs filed a Complaint under 42 U.S.C. § 1983 against the above-captioned Defendants. The matter before the court is a review of the Magistrate Judge's Report and Recommendation ("Report"). (ECF No. 83.)

For the reasons below, the court **REJECTS IN PART** and **ACCEPTS IN PART** the Report and Recommendation (ECF No. 83), **GRANTS IN PART** and **DENIES IN PART** Defendants South Carolina Department of Social Services ("DSS") and Angela Scott's Motion for Summary Judgment (ECF No. 51) and **DENIES** Defendants Kevin Preston, Misty Puckett, Richland County Sheriff's Department, and Don Robinson's ("RCSD Individual Defendants")[1] Motion for Summary Judgment (ECF No. 53).

---

[1] The Report provides: "RCSD is not amenable to suit, and the sheriff should have been named in its place. Plaintiffs do not address the argument. The undersigned agrees that the correct defendant is the sheriff and orders the Clerk's office to substitute the Richland County Sheriff for RCSD. However, for consistency, the undersigned continues to refer to the sheriff as RCSD." (ECF No. 83 at 19 n.6.)

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

The Report sets forth the relevant facts and legal standards which the court incorporates herein without full recitation. (ECF No. 83 at 3-14.)

A. <u>Family History</u>

As of July 2017, Michael Livingston is a Major in the United States Army and employed as a nurse anesthetist at Moncrief Army Community Hospital, and Heather Livingston is a counselor at St. John Neumann Elementary School in Columbia, South Carolina. (*Id.* at ¶ 12.) Plaintiffs married in June 2001 (ECF No. 1-1 at 5 ¶ 11), had a daughter in August 2004 (*Id.* at 6 ¶ 14), and had twins in July 2013. (ECF No. 83 at 3.)

B. <u>Palmetto Health Children's Hospital</u>

On September 1, 2013, Plaintiff Heather Livingston took her child ("Twin A") to Palmetto Health Children's Hospital for an examination. (ECF No. 83 at 3.) Plaintiffs allege that, on separate occasions, Twin A arched his back and struck his head on an infant bathtub and on Michael Livingston's knee while being burped. (ECF No. 1-1 at 6 ¶¶ 16, 18.) Twin A underwent a CT scan and a full body scan at the hospital that revealed a mild skull fracture and multiple rib fractures. (ECF Nos. 1-1 at 7 ¶ 24; 83 at 3.) A subsequent CT scan and full body scan of the other twin ("Twin B") also presented rib fractures. (ECF Nos. 1-1 at 9 ¶ 45; 83 at 3.) Plaintiffs claim that a similar examination of Plaintiffs' daughter revealed no injuries. (ECF No. 1-1 at 9 ¶ 54.)

Defendant Susan Luberoff, M.D., was consulted about the injuries to the children. (ECF No. 83 at 3-4.) Plaintiffs allege that Defendant Luberoff did not examine the twins, order additional testing, nor speak to Plaintiffs about the children's injuries. (ECF No. 1-1 at 7 ¶¶ 30, 46-50.) Defendant Luberoff believed that the children's injuries were the result of force applied by human

hands. (ECF No. 83 at 3-4.) Allegedly, Defendant Luberoff reported Plaintiffs to authorities. (ECF No. 1-1 at 7 ¶ 32.)

Representatives from the RCSD and DSS arrived at the hospital to speak with Plaintiffs. (*Id.*) The Report states that Plaintiffs could not offer any likely causes for the injuries. (*Id*. at 4.) However, Plaintiffs alleged that Heather Livingston explained the circumstances of Twin A's arching back and head strikes, but that Defendant Scott "told Heather [Livingston] that [Twin A's] arching and striking his head . . . could not explain the injuries." (ECF No. 1-1 at 8.) Heather Livingston allegedly stated that she and Michael Livingston only had access to the children. (*Id.*) RCSD Deputy Misty Puckett began the Emergency Protective Custody process and DSS opened a case to investigate Plaintiffs. (*Id.*) RCSD deputies detained and transported Plaintiffs to RCSD for questioning. (*Id.* at 5.) Allegedly, RCSD deputies did not read *Miranda* rights to Plaintiffs before handcuffing and placing them into the back of the police car. (ECF No. 1-1 at 10.)

C. Richland County Sheriff's Department

Plaintiffs claim that investigators aggressively questioned Heather Livingston about the children's injuries, implying that the mother is typically at fault in similar cases and that the father is also guilty for covering it up. (ECF No. 1-1 at 10 ¶¶ 68-71.) Questioning lasted ten to fifteen minutes. (ECF No. 1-1 at 11 ¶ 73.)

In a separate room, officers read Defendant Luberoff's medical conclusions to Plaintiff Michael Livingston and questioned him about his and Heather Livingston's interactions with their children. (ECF No. 83 at 3-4.) Plaintiffs allege that, after investigators read the medical report, they "asked Michael Livingston what he did to cause the injuries" to his children. (ECF No. 1-1 at 11 ¶ 76.) After the initial questioning, officers read Defendant Michael Livingston his *Miranda* rights. (*Id.*) Michael Livingston responded in the affirmative to whether he understood his rights

3

and that he did not wish to waive his right to an attorney. (*Id.*) Notably, the Report provides that: "[t]he officers placed Michael [Livingston's] cell phone out of reach at some point during the questioning. The officers found [his] attorney's number from Google. There is some implication that Plaintiff was not allowed to use his cell phone to call his attorney, but it is not clear that he asked either to use his cell phone or to look in the phone to view his attorney's number." (*Id.* at 5-6 n.2) Plaintiffs allege that "Michael's phone rang during the investigation. Lt. Robinson took the phone from him." (ECF No. 1-1 at 11 ¶ 79.) Plaintiff's call to his attorney's office, at 10:00 p.m. on a Sunday, went unanswered. (*Id.* at 5-6.)

Allegedly, investigators then "spoke openly in front of Michael [Livingston] about their plan to continue the investigation by re-examining Heather [Livingston], questioning Hannah [Livingston], and possibly polygraphing Heather [Livingston]" and "told Michael [Livingston] that they already knew Heather [Livingston] was guilty and that she was never going to see her children again." (ECF No. 1-1 at 12 ¶¶ 89, 91.)

Plaintiffs claim that "[u]nder coercion and duress and in order to protect Heather [Livingston] from false and malicious allegations that she had abused her children and in order to reunite the children with their mother and to prevent [his wife] from being taken to jail," Michael Livingston confessed. (ECF No. 1-1 at 13 ¶¶ 95-96.) Consequently, a Richland County Magistrate Judge issued arrest warrants for Michael Livingston for charges of Unlawful Conduct Toward a Child, S.C. Code § 63-05-0070 (2019).[2] (ECF No. 83 at 7.)

---

[2] Subsection A provides: "It is unlawful for a person who has charge or custody of a child, or who is the parent or guardian of a child, or who is responsible for the welfare of a child as defined in Section 63-7-20 to: (1) place the child at unreasonable risk of harm affecting the child's life, physical or mental health, or safety; (2) do or cause to be done unlawfully or maliciously any bodily harm to the child so that the life or health of the child is endangered or likely to be endangered; or (3) willfully abandon the child."

4

D. Family Court

At the Richland County Family Court, Michael Livingston reaffirmed the confession provided at RCSD. (ECF No. 83 at 8.) The judge found probable cause to remove the children from Plaintiffs' custody. (*Id.*)

E. Medical Reviews

In October 2013, a chiropractor reported that the children appeared "normal . . . showing no apparent signs of bruising or injury" at a visit prior to their admission to Palmetto Health Children's Hospital. (ECF No. 83 at 9.)

In November 2013, Dr. T. Whitney Gibson reported that radiographic studies of the children showed nothing to indicate the injuries were "non-accidental," which Plaintiffs' counsel shared with DSS. (*Id.*) One month later, Dr. Gibson re-examined the children and noted that he "did not see any signs of nonaccidental trauma whatsoever." (*Id.* (citing to ECF No. 63-22).)

In May 2014, Heather Livingston was diagnosed with Ehlers Danlos Syndrome type III ("EDS"), which weakens the musculoskeletal system, and it was determined that she likely passed it to her children. (*Id.*) Additionally, a licensed radiologist, Dr. David Ayoub, reported that the children's medical records did not contain evidence of abuse (*Id*), and Dr. Michael Holick, an endocrinologist, concluded that the children's rib injuries were old and likely the result of child birth. (*Id.*) The Magistrate Judge observed that "the parties have pointed to no evidence in the record . . . regarding *when* this information was provided to Defendants." (*Id* (emphasis added).)

F. Resolution

In May 2015, Michael Livingston appeared before the Family Court and testified that he lied both to investigators and again at the probable cause hearing "[b]ecause somebody had insisted that these injuries had to happen by human hands, and I was going to take the fall for it. They were

5

insisting somebody had to take the fall for this, and I was throwing myself onto the sword for these allegations." (ECF No. 83 at 12 (citing ECF No. 53-6 at 21:24–22:3).)

Michael Livingston's confession was deemed inadmissible and the parties reached a settlement agreement to be approved by the court. (*Id.* (citing ECF No. 51-9).). DSS agreed to no longer seek a finding of abuse or neglect against the Livingstons. (*Id.*) "The matter was converted to one for intervention and Michael was to complete a treatment plan." (*Id.*)

In November 2015, the Family Court judge determined that Michael Livingston "had completed the treatment plan and should be allowed to move back into the family home." (*Id.* (citing ECF No. 51-10).). "On January 14, 2016, full legal custody was awarded to Michael [Livingston] and Heather [Livingston] and the DSS action was closed without a finding of abuse or neglect against [Plaintiffs]." (*Id.* at 12-13 (citing ECF No. 63-25).).

In December 2016, the South Carolina Circuit Court issued an order suppressing Michael Livingston's confession after determining that it was obtained in violation of his Fifth and Sixth Amendment rights (*Id.* at 13 (citing ECF No. 64-13)), and the Richland County Solicitor dropped the indictments against Michael Livingston (*Id.* (citing ECF No. 1-1 at ¶ 183)).

G. Procedural History

On June 20, 2017, Plaintiffs filed a Complaint in the Richland County Court of Common Pleas, 2017-CP-40-03861, alleging violation of their constitutional rights pursuant to 28 U.S.C. § 1983. (ECF No. 1-1 at 1-36.) On July 26, 2017, Defendants filed a Notice of Removal. (ECF No. 1.)

On December 11, 2018, Defendants Angela Scott and DSS filed a Motion for Summary Judgment. (ECF No. 51.) On the same day, Defendants Kevin Preston, Misty Puckett, Don

6

Robinson, and RCSD filed a Motion for Summary Judgment. (ECF No. 53.) Plaintiffs filed Responses in Opposition to Defendants' motions on December 21, 2018. (ECF Nos. 61, 62.)

On June 20, 2019, The Magistrate Judge issued a Report recommending that the court grant Defendants' Motions for Summary Judgment. (ECF No. 83.) Plaintiffs timely filed objections to the Report on July 1, 2019. (ECF No. 84.) On September 5, 2019, Plaintiffs filed a supplement to the record containing a recent opinion from the Fourth Circuit Court of Appeals. (ECF No. 90.)

## II. LEGAL STANDARD

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court, and the recommendation has no presumptive weight. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The responsibility to make a final determination remains with the court. *Id.* at 271. As such, the court is charged with making *de novo* determinations of those portions of the Report to which specific objections are made. *See* 28 U.S.C. § 636(b)(1); *See also* Fed. R. Civ. P. 72(b)(3). In the absence of specific objections to the Magistrate Judge's Report, the court is not required to give any explanation for adopting the Report. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Rather, "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). Thus, the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The court is required to interpret *pro se* documents liberally and will hold those documents to a less stringent standard than those drafted by attorneys. *See Gordon v. Leeke*, 574 F.2d 1147,

1151 (4th Cir. 1978); s*ee also Hardin v. United States*, C/A No. 7:12–cv–0118–GRA, 2012 WL 3945314, at *1 (D.S.C. Sept. 10, 2012). Additionally, *pro se* documents must be construed in a favorable manner, "no matter how inartfully pleaded, to see whether they could provide a basis for relief." *Garrett v. Elko*, No. 95-7939, 1997 WL 457667, at *1 (4th Cir. Aug. 12, 1997). Although *pro se* documents are liberally construed by federal courts, "[t]he 'special judicial solicitude' with which a district court should view *pro se* complaints does not transform the court into an advocate." *Weller v. Dep't of Soc. Servs. for Balt.*, 901 F.2d 387, 391 (4th Cir. 1990).

### III. ANALYSIS

Plaintiffs list their causes of action against Defendants separately. Michael Livingston's causes of action are as follows: (1) a Section 1983 claim against RCSD Individual Defendants; (2) a Section 1983 claim against Defendant Scott; (3) a malicious prosecution claim against DSS (4) a malicious prosecution claim against RCSD; and (5) a defamation claim against Defendant Luberoff. (ECF No. 83 at 2 (citing ECF No. 1-1).) Heather Livingston's causes of action are: (1) a Section 1983 claim against RCSD Individual Defendants (2) a Section 1983 claim against Defendant Scott; (3) a malicious prosecution claim against DSS; (4) a defamation claim against Defendant Luberoff. (*Id.*)

A. <u>Plaintiffs' Objections</u>

Plaintiffs object to the Magistrate Judge's finding that there was probable cause to arrest Michael Livingston and that the continued prosecution of Heather Livingston by DSS and Defendant Angela Scott was not malicious prosecution. Specifically, Plaintiffs object to "the [Report's] conclusion and reasoning that the exclusionary rule applies to Michael [Livingston's] suppressed coerced confession and thus, could be used by the Magistrate [Judge] to determine probable cause" and "the Report's conclusion and reasoning that without Michael [Livingston's]

8

suppressed coerced confession there still was probable cause to arrest him." (ECF No. 84 at 2 ¶¶ A, B.) Further, Plaintiffs' point out that "[t]he issue of probable cause is critical to . . . [the Section] 1983 and malicious prosecution causes of action." (ECF No. 84 at 1 (citing ECF No. 83 at 2.)

B. The Court's Review

As to Michael Livingston's Section 1983 and malicious prosecution claims, the court disagrees with the Magistrate Judge's finding that RCSD Individual Defendants are entitled to summary judgment. (ECF No. 83 at 18.)

RCSD Individual Defendants claim that a "sufficient indicia of probable cause to seek the warrants against Michael [Livingston] [and] [t]hus the determination of probable cause supports an application of qualified immunity" based on the confession and the underlying facts of this case. (ECF No. 53-1 at 34.)

Plaintiffs object to the following: "the court need not exclude the confession in its determination of whether . . . probable cause to arrest Michael [Livingston]. In light of the confession, RCSD Individual Defendants had adequate probable cause to arrest [him]." (ECF No. 83 at 17.) Accordingly, the Magistrate Judge concluded that "consideration of Michael's confession demonstrates probable cause to arrest him," and "Plaintiffs have provided no law indicating the court cannot consider the confession." (ECF No. 83 at 15.) The Report also cites to the Ninth Circuit Court of Appeals. *Lingo v. City of Salem*, 832 F.3d 953, 957-59 (9th Cir. 2016) (explaining "federal courts of appeals have widely held that the exclusionary rule does not apply in [Section] 1983 cases.").

The Fourth Circuit Court of Appeals has recently spoken about the use of the exclusionary rule regarding coerced confessions. *See Gilliam v. Sealey*, 932 F.3d 216, 234 (4th Cir. 2019). The Fourth Circuit explained that deciding whether a confession has been coerced or fabricated is an

9

issue of fact that must be determined by a jury. *See Gilliam*, 932 F.3d at 234-35. Additionally, "[t]here can be no reasonable dispute that it was clearly established in 1983 that an arrest in the absence of probable cause was a violation of an individual's Fourth Amendment rights, *and that a coerced confession could not form the basis of probable cause for an arrest.*" *Id.* (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)) (emphasis added). "A coerced or fabricated confession that police know to be coerced . . . does not give police probable cause to arrest the suspect as a matter of law." *Id.* (citing *Ashcraft v. Tennessee*, 322 U.S. 143, 155 (1944) ("The Constitution of the United States stands as a bar against the conviction of any individual in an American court by means of a coerced confession.")). Whether a confession is involuntary "is a question of fact to be determined from 'the totality of all the surrounding circumstances[,] both the characteristics of the accused and the details of the interrogation.'" *United States v. Wertz*, 625 F.2d 1128, 1134 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). "This determination may not 'rest solely upon any one circumstance.'" *Id.* Further, a coerced confession "may be exacted as a result of mental coercion as well as physical abuse." *Ferguson v. Boyd*, 566 F.2d 873, 877 (4th Cir. 1977). Therefore, the allegedly coerced confession cannot be used to determine the issue of probable cause in the Report.

As to whether probable cause existed even without the allegedly coerced confession, the Magistrate Judge concluded that:

> Even before Michael confessed, the undisputed facts show RCSD . . . had the following information: (1) both twins had multiple fractured bones in different stages of healing; (2) both Dr. Donahue (child abuse admitting team) and Dr. Luberoff (child abuse specialist) concurred the injuries were non-accidental trauma and caused by human hands; (3) neither parent could offer any plausible explanation to medical personnel, DSS, or law enforcement for the cause of the injuries; and (4) no other caregivers had access to the twins."

(ECF No. 83 at 15.)

The Fourth Circuit has explained, "[p]robable cause is determined by a 'totality-of-the circumstances' approach." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." *Id.* (quoting *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998)). "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." *Id*. "In making this inquiry, we consider only the information the officers had at the time of the arrest." *Id.* (citing *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016)). Additionally, "we do not examine the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause." *Munday*, 848 F.3d at 253 (quoting *Graham*, 831 F.3d at 185).

As mentioned in the facts above, Plaintiffs allegedly offered an explanation for the children's injuries that Defendant Scott rejected. (ECF No. 1-1 at 8.) Moreover, the term "caregivers" seems to suggest that *only* Plaintiffs had access to the children since their birth, and the Magistrate Judge cites to *State v. Smith*, 597 S.E.2d 888 (S.C. Ct. App. 2004) in concluding that the underlying facts support a finding of probable cause. (ECF No. 83 at 15.) In *Smith*, the South Carolina Court of Appeals affirmed the trial judge's denial of directed verdicts for the plaintiffs because:

> The evidence showed the victim was with the defendants during the time frame the serious injury occurred, the defendants were the only responsible adults dealing with the child at that time, the evidence showed it was not an accident but was intentional, the injury could not have been caused by another child, who was the only other person present, and could not have been caused by the victim herself.

*Smith*, 597 S.E.2d at 892.

The court finds that the present action is distinguishable from *Smith*. In that case, the trial court's decision relied heavily on a specific time frame – a span of a few days – during which the

11

victim's fatal injury occurred. Here, the five-week-old children allegedly had "old and new" injuries, and how the injuries occurred – birth, weakened bones due to EDS, or human hands – is clearly in dispute.

Moreover, the Report also states that Plaintiffs' own expert agreed that there was probable cause to arrest Plaintiffs based on Defendant Luberoff's report. (ECF No. 83 at 15.) However, a review of the deposition of Plaintiffs' expert provides:

> Q: Assume with me that you understood as an investigator, further, that you had basically two people who had access to this child, *maybe three even if there is another child in the house*, but two adults, *caregivers*. Would you have probable cause to believe that one or both of those *caregivers* participated, either [an] act or omission, in the abuse of the children?
>
> A: Yes.
>
> Q: Would you – back in your tenure in law enforcement, would you would have probable cause to arrest either one of those individuals –
>
> A: Yes.
>
> Q: -- that had access? Why?
>
> A: Based on her – her credentials to what she has and, if you worked with her in the past, how many times she called it right.

(ECF No. 53-15 at 6 (emphasis added).)

The court finds that the transcript of Mr. Burgess' deposition does not support the Report's statement that "Plaintiffs' own expert testified that RCSD had probable cause to arrest both Michael [Livingston] and Heather [Livingston] based on Dr. Luberoff's report." (ECF No. 83 at 15.)

As to the claims of malicious prosecution, the Report provides that "[t]he existence of probable cause is also fatal to Michael's claim [against RCSD Individuals] for malicious prosecution related to his criminal charges." (ECF No. 83 at 18.) Further, "the Family Court

12

previously determined that DSS had probable cause to take the children into emergency protective custody." (ECF No. 83 at 22.) To succeed on a claim of malicious prosecution, "(1) the defendant has 'seized plaintiff pursuant to legal process that was not supported by probable cause and (2) that the criminal proceedings have terminated in plaintiff's favor.'" *Burrell v. Virginia,* 395 F.3d 508, 514 (4th Cir. 2005) (quoting *Brooks v. City of Winston–Salem,* 85 F.3d 178, 183–84 (4th Cir. 1996)). Here, Plaintiffs have presented a dispute of material fact entitling them to relief against DSS for malicious prosecution. *Cf. Law v. South Carolina Dept. of Corrections*, 629 S.E.2d 642, 648 (S.C. 2006) ("An action for malicious prosecution fails if the plaintiff cannot prove each of the required elements by a preponderance of the evidence, including malice and lack of probable cause.") As such Plaintiffs' claim for malicious prosecution against RCSD Individual Defendants and Defendant DSS may proceed because the existence of probable cause is a material fact in dispute.

As to Heather Livingston's claim under Section 1983 against RCSD Individual Defendants, the court agrees that it has been abandoned because Plaintiffs failed to address her claim in their briefing. (ECF No. 83 at 19 (citing *Nelson v. Sci. Applications Int'l Corp.*, No. 2:11-2928-PMD, 2013 WL 764664, at *5 (D.S.C. Feb. 7, 2013) (citations omitted)).) Therefore, Heather Livingston's Section 1983 claim against RCSD Individual Defendants is dismissed.

As to Plaintiffs' claims for violation of due process against Defendant Scott, social workers have absolute immunity for damages under Section 1983. *See Vosburg v. Dep't of Social Services*, 884 F.2d 133, 138 (4th Cir. 1989). Plaintiffs Complaint is based on Defendant Scott's continued prosecution in Family Court. (ECF No. 1-1.) Therefore, the court agrees with the Magistrate Judge's finding that Defendant Scott is entitled to summary judgment. (ECF No. 83 at 22.)

Finally, Defendant Luberoff has not submitted a Motion for Summary Judgment. (ECF No.

83 at 23.) Therefore, Plaintiffs' defamation claims against her may proceed.

## IV. CONCLUSION

For the reasons below, the court **REJECTS IN PART** and **ACCEPTS IN PART** the Report and Recommendation (ECF No. 83), **GRANTS IN PART** and **DENIES IN PART** Defendants South Carolina Department of Social Services and Angela Scott's Motion for Summary Judgment (ECF No. 51), and **DENIES** Defendants Kevin Preston, Misty Puckett, Richland County Sheriff's Department, and Don Robinson's Motion for Summary Judgment (ECF No. 53).

The following causes of action brought by Plaintiff Michael Livingston shall proceed to trial: (1) a Section 1983 claim against RCSD Individual Defendants; (2) a malicious prosecution claim against DSS; (3) a malicious prosecution claim against RCSD; and (4) a defamation claim against Defendant Luberoff.

The following causes of action brought by Plaintiff Heather Livingston shall proceed to trial: (1) a malicious prosecution claim against DSS; (2) a defamation claim against Defendant Luberoff.

Plaintiffs' causes of action against Defendant Angela Scott are dismissed.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

September 20, 2019
Columbia, South Carolina