# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Michael Livingston; Heather Livingston, | Civil Action No. 3:17-cv-01985-JMC |
| Plaintiffs, | |
| v. | **ORDER AND OPINION** |
| Susan Luberoff, *M.D.*; South Carolina Department of Social Services; Richland County Sheriff's Department; Misty Puckett, *Richland County Deputy Sheriff*; Don Robinson, *Richland County Lieutenant*; Kevin Preston, | |
| Defendants. | |

This case arises from an investigation of Plaintiffs Michael Livingston and Heather Livingston for alleged child abuse. Plaintiffs filed a Complaint alleging unlawful detainment, interrogation, and malicious prosecution against the South Carolina Department of Social Services ("SCDSS"), the Richland County Sheriff's Department, Deputy Sheriff Misty Puckett, Lieutenant Don Robinson, and Kevin Preston (collectively "RCSD Defendants"). The matters before the court are SCDSS' Motion for Reconsideration (ECF No. 99) and RCSD Defendants' Motion for Reconsideration (ECF No. 100) of the court's ruling rejecting the Magistrate Judge's Report and Recommendation ("Report") (ECF No. 83) and denying SCDSS' and RCSD Defendants' Motions for Summary Judgment (ECF Nos. 51, 53).

For the reasons below, the court **GRANTS** SCDSS' Motion for Reconsideration (ECF No. 99) and **GRANTS** RCSD Defendants' Motion for Reconsideration (ECF No. 100) thereby **REVERSING** the court's Order (ECF No. 91), **ACCEPTING** the Report (ECF No. 83), and **GRANTING** SCDSS' Motion for Summary Judgment (ECF No. 51) and RCSD Defendants'

1

Motion for Summary Judgment (ECF No. 53). [1]

## I. RELEVANT BACKGROUND TO PENDING MOTION

The Report sets forth the relevant facts and legal standards, which the court incorporates herein without full recitation. (ECF No. 83 at 3–14.) Plaintiffs had a daughter, Hannah, in August 2004, and twins, Jacson and Joseph, in July 2013. (*Id.* at 3 (citing ECF No. 1-1 at 5–6 ¶¶ 14, 15.) On September 1, 2013, Heather Livingston took Jacson Livingston to Palmetto Health Children's Hospital because his head appeared to be swollen. (*Id.*) She allegedly explained to medical personnel at the hospital that, on separate occasions, Jacson Livingston arched his back and struck his head on an infant bathtub and on Michael Livingston's knee while being burped. (*Id.* at 6 (citing ECF No. 53-3).) Jacson Livingston underwent a CT scan and a full body scan that revealed a skull fracture and multiple rib fractures. (*Id.*) A CT scan and a full body scan of the other twin, Joseph Livingston, also presented rib fractures. (*Id.*) Defendant Susan Luberoff, M.D., was consulted about the injuries to the children. (*Id.* at 3–4.) Dr. Luberoff evaluated the children's CT and full body scans and concluded that "human hands" caused their injuries. (*Id.* (citing ECF Nos. 53-14 at 3; 53-7 at 2–3 ("At this point, the child's injuries are not explained, and are most consistent with nonaccidental trauma"); 53-8 at 2–3 ("These injuries are unexplained . . . the current working diagnosis is child physical abuse.").) She communicated her findings to authorities at SCDSS and RCSD. (*Id.* (citing ECF No. 53-14 at 5).) The record shows that neither parent offered a plausible explanation for the injuries to Jacson and Joseph. (ECF No. 83 at 4 (citing ECF No. 63-6 at 102–03).) Notably, Plaintiffs stated that other than Heather and Michael Livingston, no other caregiver had access to the children. (*Id.*) RCSD Deputy Misty Puckett initiated an "Emergency Protective

---

[1] Plaintiffs' defamation claims against Defendant Susan Luberoff, M.D., are not affected by this order.

Custody" procedure and SCDSS opened a case to investigate Plaintiffs. (*Id.*) RCSD deputies detained and transported Plaintiffs to RCSD for questioning. (*Id.* at 5.)

Plaintiffs claim that investigators "aggressively" questioned Heather Livingston about the children's injuries for ten to fifteen minutes, implying that the mother is typically at fault in similar cases and that the father is also guilty for covering it up. (ECF No. 1-1 at 10 ¶¶ 68-71, 73.) In a separate room, officers allegedly read Defendant Luberoff's medical conclusions to Michael Livingston and questioned him about Plaintiffs' interactions with their children. (ECF No. 83 at 3-4.) Investigators allegedly "discussed openly in Michael's presence what their next steps may be, such as requiring Heather to take a polygraph test, arresting her, and interviewing [Hannah]." (*Id.* (citing ECF No. 53-10 at 14).) Officers read *Miranda* rights to Michael Livingston; he responded in the affirmative as to whether he understood his rights and stated that he did not wish to waive his right to an attorney. (*Id.*) Plaintiffs allege that Michael Livingston confessed "[u]nder coercion and duress and in order to protect Heather [Livingston] from false and malicious allegations that she had abused her children and in order to reunite the children with their mother and to prevent [his wife] from being taken to jail." (ECF No. 1-1 at 13 ¶¶ 95-96.) Shortly thereafter, a Richland County Magistrate Judge issued two arrest warrants for Michael Livingston for Unlawful Conduct Toward a Child. (ECF No. 83 at 7.) At a Richland County Family Court hearing, Plaintiff Michael Livingston reaffirmed his confession. (*Id.* at 8.) Consequently, the Family Court judge found probable cause to remove the children from Plaintiffs' custody. (*Id.*)

In May 2015, Michael Livingston appeared before the Family Court to renounce his confession and stated that he lied to investigators and in the probable cause hearing "[b]ecause somebody had insisted that these injuries had to happen by human hands, and I was going to take the fall for it. They were insisting somebody had to take the fall for this, and I was throwing myself

onto the sword for these allegations." (ECF No. 83 at 12 (citing ECF No. 53-6 at 21:24–22:3).) The state court judge ruled that Michael Livingston's confession was inadmissible and the parties reached a settlement agreement; SCDSS would no longer seek a finding of abuse or neglect against Plaintiffs and "[t]he matter was converted to one for intervention and Michael was to complete a treatment plan." (*Id.* (citing ECF No. 51-9).) In November 2015, a Family Court judge determined that Plaintiff Michael Livingston "had completed the treatment plan and should be allowed to move back into the family home." (*Id.* (citing ECF No. 51-10).). "On January 14, 2016, full legal custody was awarded to [Plaintiff] Michael [Livingston] and [Plaintiff] Heather [Livingston] and the DSS action was closed without a finding of abuse or neglect against [Plaintiffs]." (*Id.* at 12–13 (citing ECF No. 63-25).) In December 2016, the South Carolina Circuit Court issued an order suppressing Plaintiff Michael Livingston's confession after determining that it was obtained in violation of his Fifth and Sixth Amendment rights (*Id.* at 13 (citing ECF No. 64-13)), and the Richland County Solicitor dismissed the indictments. (*Id.* (citing ECF No. 1-1 at ¶ 183)).

On June 20, 2017, Plaintiffs filed a Complaint in the Richland County Court of Common Pleas, 2017-CP-40-03861, alleging violation of their constitutional rights. (ECF No. 1-1 at 1–36.) On July 26, 2017, Defendants filed a Notice of Removal. (ECF No. 1.) On December 11, 2018, Defendants Angela Scott and SCDSS filed a Motion for Summary Judgment (ECF No. 51) and RCSD Defendants filed a Motion for Summary Judgment the same day. (ECF No. 53.) Plaintiffs filed Responses in Opposition to Defendants' motions on December 21, 2018. (ECF Nos. 61, 62.) On June 20, 2019, the Magistrate Judge issued a Report recommending that the court grant Defendants' Motions for Summary Judgment. (ECF No. 83.) Plaintiffs timely filed objections to the Report on July 1, 2019. (ECF No. 84.) Specifically, Plaintiffs "respectfully disagree[d]" with the Magistrate Judge's finding that the "exclusion of the confession for the purpose of a criminal

case does not require it be ignored for purposes of determining probable cause" and that "probable cause existed without the coerced confession." (*Id.* at 2, 6.) Moreover, Plaintiffs claimed that SCDSS engaged in malicious prosecution of Heather Livingston by *maintaining* a proceeding without an evidentiary basis. (*Id.* at 10 (emphasis in original).) This court ruled that the alleged coerced confession could not be used to determine probable cause, and that Plaintiffs presented a dispute of material fact as to the circumstances giving rise to probable cause for their arrests based on the investigation conducted at the Palmetto Health Children's Hospital. (ECF No. 91 at 9, 10 (citations omitted).) On October 18, 2019, SCDSS and RCSD Defendants filed Motions for Reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. (ECF Nos. 99, 100.) Plaintiffs filed a Response in Opposition on October 23, 2019 (ECF No. 101), to which Defendants filed a Reply (ECF No. 102).

## II. LEGAL STANDARD AND ANALYSIS

A. <u>Standard for Relief Pursuant to Fed. R. Civ. P. 59(e)</u>

Under Rule 59(e) of the Federal Rules of Civil Procedure, a district court may alter or amend an earlier judgment "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; and (3) to correct a clear error of law or prevent manifest injustice." Fed. R. Civ. P. 59(e); *see also Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). It is the moving party's burden to establish one of these three grounds in order to obtain relief under this Rule. *See Loren Data Corp. v. GXS, Inc.*, 501 F. App'x. 275, 285 (4th Cir. 2012). The decision whether to reconsider an order pursuant to Rule 59(e) is within the discretion of the district court. *See Hughes v. Bedsole*, 48 F.3d 1376, 1382 (4th Cir. 1995). "Thus, Rule 59(e), in essence, gives the district court a chance to correct its own mistake if it believes one has been made." *Zinkland v. Brown*, 478 F.3d 634, 636 (4th Cir. 2007) (citing *Pac. Ins. Co.*, 148

F.3d at 403).

B. The Parties' Arguments

RCSD Defendants assert that (1) the court relied on "erroneous facts in reaching its determination regarding probable cause"; (2) "the recent [United States Court of Appeals for the] Fourth Circuit [] case of *Gilliam v. Sealy* is incorrectly applied"; (3) the court "improperly considered post-arrest information in reaching its determination regarding probable cause"; (4) the order "excludes any qualified immunity analysis"; and (5) the order "fails to consider absolute soverign [sic] immunity based upon the South Carolina Tort Claims Act." (ECF No. 100-1 at 2, 6, 9, 11, 16.)

SCDSS contends that: (1) Plaintiffs' causes of action for malicious prosecution were brought pursuant to South Carolina law and are subject to the provisions of the South Carolina Tort Claims Act [S.C. Code Ann. § 15-17-10, *et seq.* (2020)]"; (2) "The [Richland County] Family Court has already determined that SCDSS had probable cause to initiate and prosecute the Family Court action against Plaintiffs"; (3) "The issue of whether SCDSS had probable cause to initiate and prosecute the Family Court action is separate from the issue of whether the [Richland County Sheriff's Department] Defendants had probable cause to arrest and prosecute criminally." (ECF No. 99 at 2, 4.)

Plaintiffs contend that (1) "[t]he initial manifest injustice was Michael Livingston's coerced confession"; (2) "[*Gilliam v. Sealy*] is directly on point . . ." ; (3) and there is no change in controlling law, no new evidence has been produced, there is no error of law nor manifest injustice. (ECF No. 101 at 1–2.)

C. The Court's Review

SCDSS and RCSD Defendants seek reconsideration of the court's order rejecting the

6

Report (ECF No. 83), primarily asserting that the court erred in its probable cause analysis. (*See* ECF Nos. 99 at 4, 100-1 at 2.) As such, the court presents its review of the Report and Plaintiffs' objections below.

   *1. Report and Recommendation*

The Report states Plaintiffs' causes of action, verbatim:

> Michael's causes of action ("COA") are as follows: First COA: § 1983 claim against RCSD Individual Defendants; Second COA: § 1983 claim against Scott;[2] Third COA: malicious prosecution claim against DSS Fourth COA: malicious prosecution claim against RCSD; Fifth COA: defamation claim against Dr. Luberoff.
>
> Heather's COAs are as follows: First COA: § 1983 claim against RCSD Individual Defendants;[3] Second COA: § 1983 claim against Scott;[4] Third COA: malicious prosecution claim against DSS; Omitted Fourth COA; Fifth COA: defamation claim against Dr. Luberoff.

(ECF No. 83 at 2 (citing ECF No. 1-1.)

First, the Magistrate Judge concluded that RCSD Defendants are entitled to summary judgment as to Michael Livingston's first and fourth causes of action because they had probable cause to arrest him, "even without his allegedly coerced confession." (*Id*. at 15.) The Magistrate Judge's reasoning is as follows:

> Even before Michael [Livingston] confessed, the undisputed facts show [that] RCSD [] Defendants had the following information: (1) both twins had multiple fractured bones in different stages of healing; (2) both Dr. Donahue (child abuse

---

[2] Consistent with its first order, the court finds that Defendant Angela Scott, a SCDSS employee, is entitled to qualified immunity, and thus, "Plaintiffs' claims for violation of due process against [her]" fail. (ECF No. 91 at 13 (citing *Vosburg v. Dep't of Social Services,* 884 F.2d 133, 138 (4th Cir. 1989).)

[3] The Report provides: "Plaintiffs do not address [Heather Livingston's] claims against RCSD [] Defendants in their briefing, and they are therefore deemed abandoned . . . [g]iven the facts presented to the court and Plaintiffs' failure to present any argument, the undersigned recommends RCSD [] Defendants be granted summary judgment on Heather [Livingston's] [Section] 1983 claim against them." (ECF No. 83 at 19 (citing *Nelson v. Sci. Applications Int'l Corp.*, No. 2:11-2929-PMD, 2013 WL 764664, at *5 (D.S.C. Feb. 7, 2013) (citations omitted)).)

[4] *Supra,* note 4.

7

> admitting team) and Dr. Luberoff (child abuse specialist) concurred the injuries were non-accidental trauma and caused by human hands; (3) neither parent could offer any plausible explanation to medical personnel, DSS, or law enforcement for the cause of the injuries; and (4) no other caregivers had access to the twins . . . [and (5)] Plaintiffs' own expert testified that RCSD had probable cause to arrest both Michael and Heather based on Dr. Luberoff's report.

(*Id.* (citing ECF No. 53-15 at 6.))

Additionally, because the United States Court of Appeals for the Fourth Circuit is silent on the exclusionary rule, the Magistrate Judge relied on the court of appeals decisions in the Ninth Circuit and the Eleventh Circuit to analyze Plaintiffs' claim that Michael Livingston's confession could not be considered in determining probable cause. (ECF No. 83 at 15–16 (citing *Lingo v. City of Salem*, 832 F.3d 953, 957–59 (9th Cir. 2016) (joining other federal courts of appeals that "have widely held that the exclusionary rule does not apply in [Section] 1983 cases.");[5] *see also Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016) ("We now join our sister circuits and hold that the exclusionary rule does not apply in a civil suit against police officers"). The Magistrate Judge concluded that "the court need not exclude the confession in its determination of whether RCSD Individual Defendants had adequate probable cause to arrest Michael." (*Id.*) Consequently, "[i]n light of the confession, RCSD Individual Defendants had probable cause to arrest Michael—a fact that is supported by the magistrate's issuance of arrest warrants and the subsequent indictments by the grand jury." (*Id.* at 17–18.)

---

[5] The Ninth Circuit Court of Appeals reasoned: "The exclusionary rule is not 'a personal constitutional right of the party aggrieved.' Correspondingly, the rule 'does not proscribe the introduction of illegally seized evidence in all proceedings or against all persons.' Indeed, the Supreme Court has 'repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials.'" *Lingo*, 832 F.3d at 957–59. (citations omitted). "Critical here, 'standing to invoke the exclusionary rule has been confined to situations where the Government seeks to use such evidence to incriminate the victim of the unlawful search.' This limitation makes sense: the need to deter unlawful conduct is strongest when that conduct could result in criminal sanction for the victim of the search . . . Conversely, in a [Section] 1983 suit, the need for deterrence is minimal." *Id.* (citations omitted).

8

In conjunction with a finding of probable cause, the Magistrate Judge recommended that RCSD Defendants and SCDSS be granted summary judgment on Plaintiffs' causes of action for malicious prosecution—Heather Livingston's "Third COA"; Michael Livingston's "Third COA" and "Fourth COA"—when RCSD Defendants initiated emergency protective custody of Plaintiffs' children and SCDSS retained custody of them. (*Id.* at 22–23 (citing *Jensen v. Anderson County Dept. of Social Services*, 403 S.E.2d 615, 619 (S.C. 1991); S.C. Code Ann. § 15–78–60(23) (2005); *Law v. South Carolina Dept. of Corrections*, 629 S.E.2d 642, 648 (S.C. 2006) ("An action for malicious prosecution fails if the plaintiff cannot prove each of the required elements by a preponderance of the evidence, including malice and lack of probable cause.").

2. *Plaintiffs' Objections*

Plaintiffs proffered a total of four specific objections to the Report, with the second and third objections listed as subsections to the first objection,[6] as follows:

> Plaintiffs' respectfully object to . . . [1] A finding that there was probable cause to arrest Michael Livingston; [2] For example, the R&R's conclusion and reasoning that the exclusionary rule applies to Michael's suppressed coerced confession and thus, could be used by the Magistrate to determine probable cause; [3] For example, the R&R's conclusion and reasoning that without Michael's suppressed coerced confession there still was probable cause to arrest him; and [4] The continued prosecution of Heather by DSS and Defendant Angela Scott was not a malicious prosecution.

(ECF No. 84 at 1–2.)

Specifically, Plaintiffs claim that the Magistrate Judge erred by failing to cite authority on the exclusionary rule from the United States Court of Appeals for the Fourth Circuit. (*Id.* at 2–3 ("Instead it relies on a Ninth Circuit Court of Appeals decision, [*Lingo*].").) Moreover, Plaintiffs aver:

---

[6] In their original format, Plaintiffs' objections are (1), (1)(A), (1)(B), and (2). (ECF No. 84 at 1–2.)

> Even with all the so-called evidence, the RCSD did not arrest Michael until they had coerced his confession. In fact, the initial responding RCSD officer did nothing concerning the alleged child abuse. This fact which is absent from the [Report] and again at the summary judgment phase should inure to the benefit of the Plaintiffs. The lynch pin to the RCSD case was the confession. This is why after the confession was suppressed by Judge Hood the Richland County Solicitor's office *nolle prossed* the charges.

(*Id.* at 6.)

Finally, Plaintiffs object and contend that "[m]alicious prosecution consists of the initiation or *maintenance* of a proceeding." (ECF No. 84 at 7 (emphasis in original).) Plaintiffs claim that a psychological evaluation of Heather Livingston indicated that she did not need any parenting classes and that she was "very capable of protecting her children." (*Id.*) Alternatively, Plaintiffs allege that the true animus in the present case is found in statements made by Defendant Angela Scott:

> [SCDSS] ignored these results and continued their prosecution of Heather [Livingston] because, as [SCDSS] caseworker Defendant Angela Scott stated in front of multiple witnesses, 'There is no way we [SCDSS] are dropping the charges in this case. We are tired of white privilege and white people with expensive attorneys getting these cases dismissed' . . . the reason the 'physical abuse' case was 'maintained' by DSS against Heather for [twenty-nine] (29) months was because of the deplorable[,] malicious[,] [and] racist attitude of the DSS caseworker.

(*Id.* at 8.)

### D. The Court's Decision

After a thorough review of the Report and the record in this case, the court finds that RCSD Defendants and SCDSS are entitled to summary judgment. (*See* ECF Nos. 51, 53.) The court addresses Plaintiffs' objections in the order that they are presented.

#### 1. *Exclusionary Rule*

Plaintiffs' assertion that "[t]he bottom line is that [the state court judge] suppressed the confession and the [Report] should have also ignored the unlawful confession" is without merit.

10

Crucial to the court's finding is a July 2018 order accepting the Magistrate Judge's Report and Recommendation as to Plaintiffs' Motion for Partial Summary Judgment.[7] (*See* ECF No. 47.) The previous Report provides:

> Although couched as a motion for partial summary judgment, Plaintiffs' motion does not argue that there is an absence of a dispute of material fact. *Instead, Plaintiffs argue that collateral estoppel prevents Defendants from disputing that they 'unlawfully detained and interrogated [Michael Livingston] and then used a coerced 'confession' as a basis to arrest him and prosecute him criminally*. In addition, it appears Plaintiffs argue Defendants are collaterally estopped from taking a position contrary to any facts set forth in the "Background" section of the Suppression Order, as much of their motion is a comparison of Defendants' answer to that section of the Suppression Order.

(ECF No. 41 at 3 (citing ECF No. 28 at 4–8) (emphasis added).) Consequently, the Magistrate Judge recommended the denial of Plaintiffs' motion because RCSD Defendants "are not in privity with the State."[8] (*Id.* at 4.) Stated differently, "[b]ecause Defendants are not in privity with the state in the Criminal Action, *collateral estoppel does not apply*." (*Id.* at 5 (emphasis added).)

Apparently undeterred by the court's July 2018 order finding that collateral estoppel does not prohibit SCDSS and RCSD Defendants from disputing that they unlawfully detained and

---

[7] The record shows that Plaintiffs did not file objections to the Report issued on February 23, 2018.
[8] The Magistrate Judge continued: "The term 'privy,' when applied to a judgment or decree, means one so identified in interest with another that he represents the same legal right." (ECF No. 41 at 4 (citing *Ex parte Allstate Ins. Co.*, 528 S.E.2d at 681 (citations omitted)).) "In this case, Defendants have a legal interest distinct from the State's in the Criminal Action. Other courts considering the issue have reached the same conclusion." (*Id.* at 4–5 (citing *Kinslow v. Ratzlaff*, 158 F.3d 1104 (10th Cir. 1998) (finding there was no privity between arresting officers in a civil case and the state in the criminal action); *McCurry v. Allen*, 688 F.2d 581 (8th Cir. 1982) (rejecting the use of collateral estoppel to establish a search and seizure was unreasonable based on a suppression order in a criminal action); *Jenkins v. City of New York*, 478 F.3d 76, 85–86 (2d Cir. 2007) (finding that it was error for the district court to preclude defendant officers from asserting that they had probable cause to arrest the plaintiff because the officers were not in privity with the state in a criminal action); *see also, Bilida v. McCleod*, 211 F.3d 166, 170–71 (1st Cir. 2000) ("[T]he interests and incentives of the individual police or officials are not identical to those of the state, and the officers normally have little control over the conduct of a criminal proceeding. Thus, whether there was a violation remains an open issue.").

interrogated Michael Livingston, Plaintiffs, again, insist that Michael Livingston's alleged coerced confession should be excluded from the court's consideration under the exclusionary rule. (*See* ECF Nos 83 at 15; 84 at 2–6.) Plaintiffs' objections failed to cite any case law supporting their claim, but they sought to cure the deficiency by filing a supplement to their objections that included a Fourth Circuit decision that Plaintiffs deemed to be a "game-changer." (ECF No. 90 (attaching *Gilliam v. Sealey*, 932 F.3d 216 (4th Cir. 2019).) However, the court disagrees and finds that the *Gilliam* case is inapplicable to this action. The Fourth Circuit did not expound on the exclusionary rule, but rather found that "[a] coerced or fabricated confession that police know to be coerced . . . based on the use of coercive interrogation tactics, the age and intellectual disabilities [], and the inconsistencies between the confessions and the crime scene [] does not give police probable cause to arrest the suspect as a matter of law." *Gilliam*, 932 F.3d at 234 (citing *Ashcraft v. Tennessee*, 322 U.S. 143, 155 (1944) ("The Constitution of the United States stands as a bar against the conviction of any individual in an American court by means of a coerced confession.") Simply put, the narrow holding in *Gilliam* is not "directly" on point because it does not address the exclusionary rule. Therefore, the court finds that the Magistrate Judge did not err in relying on case law beyond the purview of the Fourth Circuit by including the suppressed confession and the two arrest warrants issued for Unlawful Conduct Toward a Child in determining that probable cause did exist. (*See* ECF No. 83 at 16–18.)

    2. *Probable Cause*

Plaintiffs contend that the alleged coerced confession is the "lynch pin" for RCSD Defendants' arrest of Michael Livingston, and thus, is tantamount to a violation pursuant to Section 1983. (ECF No. 83 at 2 ("First COA") (citing ECF No. 1-1).) Even if the court disregards the exclusionary rule, the record proves probable cause existed as a result of the findings from the

investigation at Palmetto Health Children's Hospital, well before Michael Livingston's confession to RCSD Defendants.[9] (*Id.* at 15.)

Probable cause "is a 'practical, nontechnical conception . . . [i]n dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949). The Fourth Circuit has explained that "[p]robable cause is determined by a 'totality-of-the circumstances' approach." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) (quoting *Gates*, 462 U.S. at 230). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." *Id*. (citing *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998)). "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." *Id*. "In making this inquiry, we consider only the information the officers had at the time of the arrest." *Id*. (citing *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016)). In determining whether the circumstances give rise to probable cause, it is improper to consider or question the subjective impressions of the investigating officer. *See generally Munday*, 848 F.3d at 253 ("[W]e do not examine the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause") (citation omitted); *see also Crowell v. Herring*, 392 S.E.2d 464 (Ct. App. 1990) ("[O]nly the facts and circumstances which were known

---

[9] Plaintiffs objections point to a footnote in the Report as evidence of a constitutional violation by RCSD Defendants: "The officers placed Michael [Livingston's] cell phone out of reach at some point during the questioning. The officers found [his] attorney's number from Google. There is some implication that [he] was not allowed to use his cell phone to call his attorney, but it is not clear that he asked either to use his cell phone or to look in the phone to view his attorney's number." (ECF No. 83 at 5-6 n.2) However, the footnote is linked to the following sentence: "Michael provided the officers with the name of his attorney, a real estate attorney, and allowed Michael to call the attorney's office," which occurred at 10:00 P.M. on a Sunday; the call went unanswered. (*Id.* at 5–6.) Plaintiffs' contention is unavailing.

or should have been known to the prosecuting witness at the time of the institution of prosecution should be considered").

Under South Carolina law, "Child Abuse" occurs when: "the parent, guardian, or other person responsible for the child's welfare: (i) inflicts or allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child, including injuries sustained as a result of excessive corporal punishment . . ." S.C. Code Ann. § 63-7-20(6). "It is unlawful for a person who has charge or custody of a child, or who is the parent or guardian of a child, or who is responsible for the welfare of a child as defined in Section 63-7-20" to: (1) "place the child at unreasonable risk of harm affecting the child's life, physical or mental health, or safety"; (2) "do or cause to be done unlawfully or maliciously any bodily harm to the child so that the life or health of the child is endangered or likely to be endangered"; or (3) "wilfully abandon the child." S.C. Code Ann. § 63-5-70(A)(1)–(3). "A person who violates subsection (A) is guilty of a felony and for each offense, upon conviction, must be fined in the discretion of the court or imprisoned not more than ten years, or both." S.C. Code Ann. § 63-5-70(B). Notably, the Child Abuse statute defines probable cause as "facts and circumstances based upon accurate and reliable information, including hearsay, that would justify a reasonable person to believe that a child subject to a report under this chapter is abused or neglected." S.C. Code Ann. § 63-7-20(22) (2019).

Here, the Report includes a myriad of sources in the record that establish probable cause as defined by Section 63-7-20, such as Defendant Dr. Luberoff's testimony:

> Elizabeth Donahue, M.D., a pediatric resident and part of the admitting team, made a diagnosis of nonaccidental trauma. Donahue then consulted Dr. Luberoff, a

medical specialist from the Assessment and Resource Center.[10] Dr. Luberoff reviewed the studies, including the initial x-rays, and identified injuries initially undetected. She recommended that an abdominal CT be ordered on Twin A based on his severe skull fracture and ten fractured ribs. Dr. Luberoff believed Twin A was injured through physical abuse, specifically through force applied to the ribcage sufficient to break his ribs. Dr. Luberoff opined the force must have been applied by human hands. Dr. Luberoff opined Twin B's injuries consisted of seven fractured ribs, with old and new injuries (all located laterally), which she similarly believed were caused by force applied to his ribcage sufficient to break his ribs. Neither parent offered medical personnel or legal authorities any likely causes for these injuries. Heather was adamant that only she and Michael had access to the twins. Q: 'She was adamant that only she and her husband had been taking care of him,' correct?; A: Correct.

(ECF No. 83 at 3–4 (citing ECF No. 53-14 at 5–15).)

Additionally, Deputy Sheriff Misty Puckett's "Supplemental Incident Report" includes the following narrative about her encounter with Dr. Luberoff, verbatim:

On [September 1, 2013] at 7:26 PM, I responded to a child abuse case at Palmetto Health Richland. I made contact with the complainant/DSS worker, Angela Scott, and she stated that the victims (Jacson Livingston (5 weeks old) and Joseph Livingston (5 weeks old)) had sighs [sic] of child abuse. I made contact with Dr. Susan Luberoff, the Child Abuse Doctor, and she stated victims suffered from external and internal injuries. The previous exam of victim Jacson Livingston did not indicate any broken ribs and the skull fracture to be mild in nature. Dr. Luberoff did an extension exam and found that victim Jacson Livingston suffered from a skull fracture, severe in nature and a total of ten fractured ribs (old and new injuries) and victim Joseph Livingston suffered from a total of seven fractured ribs (old and new injuries) . . . The victims will remain in the hospital for an unknown time.

(ECF No. 64-7 at 2–3 (noting that the "[p]revious report changed from 'All Other Responses' to 'Child Abuse'"; *Compare* ECF No. 64-5 at 2–3).)

Plaintiffs claim that probable cause did not exist until Michael Livingston confessed. (ECF No. 84 at 6 ("The lynch pin to the RCSD case was the confession").) Yet, the undisputed facts show otherwise; RCSD Defendants seized Plaintiffs at Palmetto Health Children's Hospital,

---

[10] "The Assessment and Resource Center is a clinic of the South Carolina Department of Mental Health that evaluates children upon a suspicion of or a concern for physical abuse, sexual abuse, or neglect." (ECF No. 83 at (citing ECF No. 53-14 at 11, 17).)

thereby negating the contention that the confession, by itself, triggered Michael Livingston's arrest. *See Fla. v. Bostick*, 501 U.S. 429, 439 (1991) (holding that "[i]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.") Here, the court finds that Michael Livingston's testimony would lead a reasonable person to believe that they were not free to leave police custody:

> And then they said; no, you're being detained and we're going to go down to the Sheriff's Department to get questions. And then that's when Heather said; I just told my daughter, you know, I'll be right back. Can I go say good-bye? No, you can't do that. And then she said; well, can I get my purse? And Officer Puckett, I believe said; no, I'll get it for you. And then we were placed in cuffs, walked down the hall . . . we were in handcuffs, embarrassed, walking through the hallway around the nurses' desk . . . we were handcuffed up front. And when we got to the car, they actually took them off and handcuffed us in the back and then sat us in the car . . .
>
> And then [at RCSD] we were escorted to the break room. Cuffs are taken off . . . Officer Puckett was standing outside the door.

(ECF No. 53-10 at 10–11.)

Moreover, Plaintiffs assert misguided opposition to the Magistrate Judge comparing of the facts of this case to the facts in *State v. Smith*, 597 S.E.2d 888 (S.C. Ct. App. 2004). (*See* ECF No. 84 at 7; *see also* ECF No. 83 at 15 ("The South Carolina Court of Appeals found a trial court did not err in denying a directed verdict after the presentation of similar facts at trial.").) The Magistrate Judge limited her comparison to *Smith* to simply illustrate Plaintiffs' "exclusive control and access" of their children. The record reflects the underlying point, e.g., Defendant Robinson testified that investigators "[understood] that the parents, being Heather and Michael, had dual access and exclusive access to the child." (ECF No. 88 at 5–6 (citing ECF No. 53-12 at 51–52).) Heather Livingston's testimony aligns with Defendant Robinson's testimony:

16

> Q: Would there have been any plausible explanation for the cause?
>
> A: I could not explain them. I could not.
>
> Q: You told law enforcement that you couldn't explain it?
>
> A: No, because I did not hurt them and I know my husband did not hurt them -- I could not explain it.

(ECF No. 88 at 5-6 (citing ECF No. 53-11 at 145–46).)

In addition to claiming exclusive control and access to the twins, Michael Livingston's testimony eliminates the notion that Plaintiffs' daughter had a part in harming them:

> Q: [A]t that point the twins are only five weeks old; correct?
>
> A: Exactly.
>
> Q: Now, they have a nine-year-old sister, but you're not leaving her to watch the kids while you're in the other room or anything, because the boys are only five weeks old; correct?
>
> A: Right. We didn't give her that responsibility until later.

(ECF No. 88 at 6 (citing ECF No. 53-10 at 47).)

Therefore, the court finds that the totality of the circumstances prior to Michael Livingston's alleged coerced confession established probable cause for RCSD Defendants to arrest Michael Livingston. (*See* ECF No. 83 at 15.) Accordingly, RCSD Defendants are entitled to summary judgment as to Michael Livingston's Section 1983 claim against them.[11]

### 3. Malicious Prosecution

Plaintiffs' alleged malicious prosecution by SCDSS and RCSD Defendants.[12] (ECF No. 83

---

[11] *Supra*, note 5.

[12] The court observes that "Plaintiffs failed to object to the portions of the Magistrate Judge's Report and Recommendations that recommend the grant of absolute immunity to [Defendant Angela] Scott or the dismissal of Michael Livingston's cause of action for malicious prosecution. Consequently, Plaintiffs have abandoned their 42 U.S.C. § 1983 claims against [SCDSS] and

17

at 2 (citing ECF No. 1-1.) Given her conclusion with respect to probable cause, the Magistrate Judge recommended that SCDSS and RCSD Defendants be granted summary judgment because "a lack of probable cause is required for a malicious prosecution claim." (ECF No. 83 at 22 (citing *Law v. South Carolina Dept. of Corrections*, 629 S.E.2d 642, 648 (S.C. 2006) ("An action for malicious prosecution fails if the plaintiff cannot prove each of the required elements by a preponderance of the evidence, including malice and lack of probable cause.").) Plaintiffs object and contend that SCDSS *maintained* a proceeding against Heather Livingston without probable cause. (*See* ECF No. 84 at 7 (emphasis in original).)

A malicious prosecution claim requires each of the following to be established: (1) the institution or continuation of original judicial proceedings, either civil or criminal; (2) by, or at the instance of, the defendant; (3) termination of such proceedings in a plaintiff's favor; (4) defendant's malice in instituting such proceedings; (5) lack of probable cause; and (6) a resulting injury or damage. *See Jordan v. Deese*, 452 S.E.2d 838 (1995); *see also Gaar v. North Myrtle Beach Realty Co.*, 339 S.E.2d 887 (Ct. App. 1986); *Robinson v. Metts*, 86 F. Supp. 2d 557 (D.S.C. 1997), *aff'd*, 188 F.3d 503 (4th Cir. 1999). A plaintiff's actual guilt or innocence is generally irrelevant to a finding of probable cause. *See Deaton v. Leath*, 30 S.E.2d 335 (S.C. 1983). Importantly, "[a]n action for malicious prosecution fails if the plaintiff cannot prove each of the required elements by a preponderance of the evidence, including malice and lack of probable cause." *Law*, 629 S.E.2d at 648.

Here, the Richland County Family Court "found probable cause for law enforcement to have removed the children from [Plaintiffs] custody and for [SCDSS] to assume legal custody . . .

---

Michael Livingston has also abandoned his claim for malicious prosecution against SCDSS." (ECF No. 85 at 1–2.)

." (ECF No. 83 at 8 (citing ECF No. 51-3).) When there is a report of child abuse, SCDSS has a "special duty . . . to investigate and intervene . . . ." *Jensen v. Anderson County Dept. of Social Services*, 403 S.E.2d 615, 619 (S.C. 1991) (noting DSS is under a "special duty . . . to investigate and intervene in cases where child abuse has been reported."). Under South Carolina law, it is child abuse to "allow to be inflicted upon the child physical or mental injury." S.C. Code. § 63-7-20(6)(a)(i). Here, Michael Livingston's confession implicated Heather Livingston had witnessed him 'manhandling' at least one of the children and did nothing to stop him." (ECF No. 85 at 3 (citing ECF Nos. 70; 53-3.) Even without the confession, the record shows that SCDSS received a report of child abuse: "Facts/Observations: It was reported, 5-week-old came into the ER with the left side of his head swollen. CT scan . . . showed the child has a fractured skull. It was reported that mom and dad are the only ones who care for the child." Additionally, under the section titled "Supporting Documentation/Evidence," the report stipulates that "[t]he minor child and his twin brother were given x-ray and scans of their body which showed several fractured, some in the healing stages . . ." (ECF No. 64-21 at 2.) Accordingly, because probable cause existed for SCDSS to investigate and prosecute child abuse, the court finds that Plaintiffs' causes of action for malicious prosecution fail. *See Law*, 629 S.E.2d at 648.

### III. CONCLUSION

Therefore, the court **GRANTS** South Carolina Department of Social Services' Motion for Reconsideration (ECF No. 99) and **GRANTS** Richland County Sheriff's Department, Deputy Sheriff Misty Puckett, Lieutenant Don Robinson, and Kevin Preston's Motion for Reconsideration (ECF No. 100) thereby **REVERSING** the court's Order (ECF No. 91), **ACCEPTING** the Report (ECF No. 83), and **GRANTING** SCDSS' Motion for Summary Judgment (ECF No. 51) and RCSD Defendants' Motion for Summary Judgment (ECF No. 53).

Accordingly, the following causes of action brought by Plaintiff Michael Livingston are dismissed: (1) Section 1983 claim against RCSD Defendants; (2) malicious prosecution claim against SCDSS; (3) malicious prosecution claim against RCSD Defendants. The following cause of action brought by Plaintiff Heather Livingston is dismissed: (1) malicious prosecution claim against SCDSS. Consequently, the only cause of action remaining is Plaintiffs' defamation claim against Defendant Susan Luberoff.

**IT IS SO ORDERED.**

J. Michelle Childs
United States District Judge

February 21, 2020
Columbia, South Carolina